# Bell's Estate.   Bell's Appeal.

| 147 | 389 |
|-----|-----|
| 180 | 73 |

| 147 | 389 |
|-----|-----|
| f198 | 620 |

| 147 | 389 |
|-----|-----|
| f212 | 103 |

| 147 | 389 |
|-----|-----|
| 227 | 1156 |

*Wills—Intestacy as to residue.*

If an intestacy occurs by reason of the failure of a contingent remainder, where there is no limitation over, the next of kin and heirs entitled to take the estate are to be ascertained as of the date of the death of the testator, and not at the date of the determination of the contingency; and the fact that the person to whom the prior estate was given, though his death was to precede the ultimate limitation, is himself an heir, does not change the result.

Testator upon the death of his wife gave the entire income to his daughter for life, with a power of appointment to her children of the principal of the trust estate, but in default of such appointment, then he directed payment of the said principal to her children in equal shares.   And in case of her death without leaving issue, then he directed his executors and trustees to pay and divide the said capital among his brother and sisters and their issue, and his wife's brothers and sisters and their issue, in the proportion mentioned in the will; but in case either branch shall be then dead, without leaving lawful issue, then to pay and divide said capital to and among that branch which shall then be surviving.   No disposition was made of his estate upon the happening of the death of both branches. *Held,* that as the daughter would take her deceased mother's share, she would take the entire undisposed-of estate as heir at law of her father.

Argued Jan. 29, 1892.   Appeal, No. 210, Jan. T., 1892, by John Bell, from decree of O. C. Philada. Co., dismissing exceptions to the adjudication of the account of the Pennsylvania

Company for Insurance on Lives and Granting Annuities, sub-
stituted trustees under the will of William J. Bell, deceased.
Before PAXSON, C. J., STERRETT, McCOLLUM, MITCHELL and
HEYDRICK, JJ.

HANNA, P. J., filed the following adjudication :

" No objection was made to the account by any of the par-
ties present, it being conceded to be correct.

" Testator died leaving a will and codicil dated respectively
January 31, 1827, and March 2, 1831, which were duly proven
January 3, 1835, and letters testamentary granted to Horace
Binney, Esq.    The estate now accounted for is the part of one
half of three fifths and two fifths of the testator's estate, which,
by the provisions of his will, was held in trust and the income
thereof paid to his daughter, Maria E. Bell (afterwards Swann),
during the full term of her natural life, upon her death to di-
vide and pay the capital to and among the children of said .
daughter and issue of any deceased children in such shares
and proportions as she shall by will appoint.    In default of
such appointment to go to such children and issue, etc.. In
case of death without leaving issue living, the income to be
paid to testator's wife Margaret, during her life, and from and
after her decease, and of his daughter, without leaving issue,
etc., to pay and divide the capital as follows : Two equal third
parts in equal portions to and among his brother James and
his sisters Catharine and Rachel, or to the survivor of them
and the issue of such of them as may be then deceased leaving
issue, such issue only to take a parent's share, and the remain-
ing one equal third part to his wife's brother and two sisters or
the survivors and the issue of such as may be deceased in like
manner and proportions as aforesaid.    In case either his said
brother and sisters, or if his wife's brother and sisters shall
then be dead, without leaving lawful issue behind them, then
in trust to pay and divide the said capital to and among that
branch which shall then be surviving, in the same manner and
proportion, provided in regard to the two thirds and one third
in case both branches shall then be living.    By the codicil it is
provided that the part or share of Maria Bell, his wife's sister,
is to be held in trust for her during life, for her separate use,
etc., and upon her death, if she leaves children, to go to and be

paid them as they respectively attain the age of twenty-one years, or if a female, on the day of her marriage. But in case of her death without leaving any issue behind her, or if her child or children shall die under age, or being a female unmarried, then to pay and transfer the said part of his estate to the same person or persons and in the same interest and estate that would be entitled under his will in case the said Maria had died in his lifetime.

" Letters of administration, d. b. n. c. t. a., were granted to the accountant twenty-fifth of April, 1870.

" It was stated and admitted by all parties that the testator's widow, Margaret Bell, his brother James and his sisters Catharine and Rachel all died, the latter three named without issue, in the lifetime of testator's daughter, Maria E. Swann. Also that her mother's brother William, and her sisters, Esther Stewart and Maria Smith, also died in her lifetime without issue, thus leaving testator's daughter, Mrs. Maria E. Swann, alone surviving, and entitled to the income of the trust. Mrs. Maria E. Swann died March 21, 1891, leaving a will, and without issue, her surviving. She appointed the accountant and Peter McCall, Esq., now deceased, executors of her will.

" In her will, a copy of which was produced, she mentions this trust estate, says her father's brother, James, and his sisters Catharine and Rachel, are all deceased, without issue, and her mother's brother, William, and his sister, Esther Stewart, also deceased, without issue ; and in the event of her surviving her aunt, Mrs. Smith, her belief that she would be entitled to the fund held in trust, and makes disposition thereof in such case. Her aunt, Mrs. Smith, as before stated, died before her without leaving issue.

" The only question before the auditing judge was as to the proper distribution of the trust estate.

" On behalf of the accountants and legatees under the will of Mrs. Swann, it was claimed it should be awarded to her executors, as she was entitled to the residuary estate held in trust as the heir at law of testator, he having died intestate as to said residue after the termination of her life estate, she having died without issue.

" While on the other hand it was claimed by Messrs. Geiger & Porter, that testator having died intestate as to the re-

siduary estate held in trust it should be awarded to his heirs
and next of kin living at the death of Mrs. Swann, the ten-
ant for life, and not to those standing in that relation at the
death of testator.

" It is conceded as settled law, that intestacy relates back to
the death of the decedent: Miller v. Miller, 10 Metcalf,
393 ; Kingsbury v. Scovill, 26 Conn. 349 ; Armstrong v. Gran-
din, 39 Ohio, 368 ; Getz's Ap., DeSilver's Estate, not yet
reported. And the person or persons at that time standing in
the relation of heirs at law or next of kin of the intestate,
according to the statute of distribution, will be entitled to
take.

" It is also a well-settled maxim that the heir at law is not to
be disinherited unless such intention clearly appear from the
language of the will, either from express words or necessary
implication. Unless it clearly appears, therefore, from the
will, that testator's intention was that his daughter should not
inherit his residuary estate upon the failure of the contingent
estates created by the will, she is entitled under the intestate
law. This intention must be demonstrated from the context.
Williams on Executors, 1212.

" And this is the law as held by our brother, PENROSE, in
Stewart's Estate, recently adjudicated, and not yet reported :
' When a testator directs that in a certain event, after the ex-
piration of a particular interest, the estate shall go to his heirs
or next of kin, or to the person who would take under the in-
testate laws, etc., he is to be understood as meaning the per-
sons who would have so taken at the time of his death, and
not at the time appointed for their taking, unless ˙the will
affords clear and unequivocal evidence to the contrary. The
fact that the person to whom the prior estate is given, though
his death is to precede the ultimate limitation, is himself an
heir, does not change the result or show such unequivocal
intention that he was not also to take as heir upon the happen-
ing of the contingency ; nor is the word " then," as introduc-
tory of the limitation, to be ˙understood as an adverb of time
or as indicating anything else than the event on which the
heirs, etc., are to take.'

" In the will before us there is no gift over to heirs or next
of kin, etc. Testator upon the death of his wife gives the en-

tire income to his daughter for life, with a power of appointment to her children of the principal of the trust estate, but in default of such appointment, then he directs payment of the said principal to her children in equal shares, etc. And in case of her death without leaving issue, then he directs his executors and trustees to pay and divide the said capital among his brother and sisters and their issue, and his wife's brother and sisters and their issue, in the proportion mentioned in the will; but in case either branch shall be then dead without leaving lawful issue, then to pay and divide said capital to and among that branch which shall then be surviving, etc.

"But he failed to make any disposition of his estate upon the happening of the death of both branches designated in the will, without leaving issue, viz.: his brother and sisters, and his wife's brother and sisters, or in the event of his daughter surviving them, and her death without issue living at her death.

"As the will is thus silent, no intention of testator as to the ultimate disposition can be inferred, other than, if all the objects of his bounty should die in the lifetime of his daughter to whom he had given but a life estate with a power to appoint to her children, and if she should die without issue surviving her, his estate should be disposed of according to the intestate law. In the opinion of the auditing judge there is but little room for argument. The testator died intestate, as of the date of his death, and his heirs or next of kin, according to the intestate law, will, by force of the statute, take his undisposed of estate. It being shown that his widow and daughter survived him, they would take the personalty in the proportions provided by the act of assembly.

"And as the daughter would take her deceased mother's share as her sole heir, it follows, she would take the entire undisposed-of estate as heir at law of her father. It was earnestly argued that it sufficiently appears from the will that testator intended his daughter should take no more of his estate than is specifically bequeathed to her, viz.: a life estate in the income of the residuary estate, and that upon her death without issue, the trust fund should go to those who were his living heirs and next of kin at the date of her death. But as already shown he has expressed no intention whatever as to the ultimate dis-

position of his estate. He evidently did not contemplate his daughter would survive all his other beneficiaries, or if she did that she would die without issue. As he did not provide for these contingencies, which he might have done, the law then gives his undisposed-of estate to the one whom it presumes testator would have indicated as the natural object of his bounty.

" This is not a case like Stewart's Estate referred to, where testator, after providing for intermediate estates, after their failure gives his residuary estate to 'my right heir, according to the course of the intestate laws.'

" If the same or similar expressions were used by this testator, much might be said upon the question whether he contemplated his right heirs living at his death or at the death of the life tenants. But no such language is used; and when testator directed after the death of his wife and daughter without issue, then upon the further trust for his brother and sisters et al., he simply meant 'in that event' or 'in case of' their death, and not 'upon' their death, or 'when they die,' or in other words, the adverb 'when' did not indicate the time of the vesting of the estate bequeathed.

"So that in Buzby's Ap., 61 Pa. 117, WILLIAMS, Justice, said, ' The limitation to the heirs must be construed to mean those who are such at the testator's death, unless a different intent clearly appear.'

" But, as before remarked, there is in the present case no limitation over. The testator simply died intestate as to a part of his estate, and it is immaterial whether his daughter received much or little of his estate, she received no part of this residuary estate.

" The same argument was used in Carmen's Estate, 11 W. N. C. 95, (affirmed by the Supreme Court,) that because a widow was amply provided for in her husband's will she should not be allowed to participate in the residue, as to which he died intestate. But her claim was allowed, following Reed's Ap., 82 Pa. 428.

" Other points of objection were raised, but it is needless to further discuss the subject. The auditing judge being of opinion that Mrs. Swann as sole heir at law of testator, is entitled under the intestate law to the balance of both principal

and income in the hands of the trustee, the same is awarded to accountant as her executor, to be hereinafter accounted for according to law, and they will transfer to themselves as executors the investments and securities in their custody as administrator d. b. n. c. t. a. and trustee."

Exceptions to the adjudication were dismissed by the court.

*Errors assigned* were (1) in awarding the trust estate to the executors of the will of Maria E. Swann; (2) in not awarding the said trust estate to the appellant Rev. John Bell; (3) in deciding that the heirs of the decedent entitled to the principal of the trust were to be determined as of the date of the testator's death; (4) in not holding that such heirs were to be determined as of the date of the death of Mrs. Swann; (5) in not holding that Maria E. Swann died intestate as to the principal of the trust, if entitled thereto; (6) in awarding the whole estate to Maria E. Swann without proof that she was entitled to a portion under the will of her mother.

*William W. Porter, Frederick J. Geiger* with him, for appellant.

*John G. Johnson, J. Percy Keating, Edward Hopkinson, John Cadwalader* and *C. W. McKeehan* with him, for appellee.

Per Curiam, February 8, 1892.

This decree is affirmed upon the opinion of the learned judge of the orphans' court, and the appeal dismissed at the costs of the appellant.