Boyer et al. *v.* Campbell et al., Appellants.

Argued March 27, 1933.   Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Geo. W. Scott,* with him *J. R. McCreight,* for appellant.—Where there is any vagueness, doubt or uncertainty as to the actual intent of the testator, the presumption is that the testator intended a vested estate rather than a contingent estate: Marshall's Est., 262 Pa. 145; Groninger's Est., 268 Pa. 184.

Gift to class does not prevent vesting: McCauley's Est., 257 Pa. 377; Edward's Est., 255 Pa. 358.

*Carl E. Gibson,* with him *Homer T. Gaut* and *James McGill Boyer,* for appellees.—The expressed intention of the testator must govern: Bumm's Est., 306 Pa. 269.

The final determination of the ownership of the property is contingent and depends entirely upon who may be living on the death of the testator's last surviving daughter.

OPINION BY MR. JUSTICE DREW, April 10, 1933:

Plaintiffs, grandchildren of the brothers and sisters of James B. Boyer, deceased, brought this action in ejectment for certain real property in Monongahela City owned by him at the time of his death. At the trial, under binding instructions, a verdict was rendered for plaintiffs for the property in dispute and for $4,000 net mesne profits—a sum admittedly proper, if plaintiffs are entitled to judgment. From the refusal of the court in banc to enter judgment n. o. v. and from the judgment entered on the verdict for plaintiffs, defendants appealed.

Boyer died in 1889, testate, survived by his widow and two daughters, Lena Boyer and Mary Elizabeth Cook, who was married to Samuel Cook. He owned two pieces

of real estate, and by his will, which he wrote himself, he gave one of them to each of his daughters. By the fourth paragraph of the will, he disposed of the property now in controversy as follows:

"I give to my daughter Lena Boyer the Ballance of My real Este consisting of the property runing from second & main down to Railroad St She to have full controll at her mothers death by keeping up all repairs paying all taxes & keeping well insured then at her death to go to her children if no children then to the other ones children if my daughters should both die without children then this proper to go to my Brothers and Sisters grand Children share & share alike But if either of my Children should have children living to go to them."

Lena Boyer died in 1900, intestate, unmarried, and without issue. Her sister, Mary Elizabeth Cook, and a nephew, James B. Cook, a son of Mary Elizabeth Cook, survived her. Testator's widow died in 1905. In 1915 the sheriff of Washington County sold and conveyed all the right, title and interest of Mary Elizabeth Cook and James B. Cook in this property to the Monongahela City Trust Company. In 1923, the trust company conveyed the property to the defendants in this action. James B. Cook died in 1929. His mother died on April 16, 1930.

Plaintiffs contend that, as neither of testator's daughters left children surviving her, the property passed to them as the grandchildren of testator's brothers and sisters, by virtue of the provisions in the above quoted fourth paragraph of the will.

This contention seems to us clearly correct. The first consideration in construing a will is to give effect to the intention of the testator, and where, as here, that intention is expressed in plain language, no technical rules of construction are necessary: Leech's Est., 274 Pa. 369; Price's Est., 279 Pa. 511; Bumm's Est., 306 Pa. 269. While this will is unskilfully drawn, since the testator in attempting to create remainders and contingent remainders to unborn children of his daughters was a con-

siderable distance beyond his depth, the language of the will leaves no doubt as to his intention. He desired to benefit, first, his daughters, to whom he gave immediate life estates in the property devised; second, should either of his daughters have children, his grandchildren, to whom he gave remainders; and third, the grandchildren of his brothers and sisters, in whom the property should ultimately vest should his daughters both die and leave no issue surviving. Obviously he wished his own grandchildren to inherit his property in preference to those of his brothers and sisters. The final sentence of paragraph four makes this very plain. He there made certain that at the death of his surviving daughter his *living* grandchildren should inherit.

It is clear that at Lena's death this property was to go to her children, should any survive her, or, in default thereof, to her sister's children. But the testator did not intend that the class of Mary Elizabeth's children who should take be determined at Lena's death. The words, "if my daughters should both die without children," stating the contingency upon which the estate was finally to vest, can only refer to the death of the last survivor of the two daughters—to the death of Mary Elizabeth as well as that of Lena. Had he intended the estate to vest at Lena's death, he would have made no reference to the death of Mary Elizabeth; it would have been unnecessary to do so. It is obvious that the testator desired all of Mary Elizabeth's children, whether born before or after the death of Lena, to inherit the property should Lena die childless. To effectuate this intention, it was essential to postpone the moment of vesting until Mary Elizabeth's death, should she outlive Lena, in order to determine as of that time the class to whom the property was to go. Since when Mary Elizabeth died, no issue of testator survived, the property then vested, under the plain terms of the will, in the collateral grandchildren. This construction gives a reasonable interpretation to all the language in paragraph

four of the will, and, although it does not make for the earliest possible vesting, it reaches the result testator clearly intended.

The intention of the testator could not be destroyed by the fact that after the death of Lena, and in the lifetime of Mary Elizabeth, at a time when her son was still living, this property was conveyed to the Monongahela City Trust Company as the property of Mary Elizabeth Cook and James B. Cook. Of course, the only title defendants could get was that which the trust company thus obtained. So far as this property is concerned, Mary Elizabeth had no interest whatever, and, under the terms of the will, the estate of James B. Cook therein was defeasible, and was divested by his failure to survive his mother. The interest of the trust company, and of the defendants, who claim through it, can rise no higher.

Judgment affirmed.